UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZANE J. KIRBY, *et al.*, | |
| Plaintiffs, | Case No. C22-5168-BHS-MLP |
| v. | REPORT AND RECOMMENDATION |
| MCMENAMINS INC., *et al.*, | |
| Defendants. | |

## I.   INTRODUCTION

This matter is before the Court on Plaintiffs Zane Kirby, Owen Terhorst, Erin Jarmon, Rebecca Breshears, and Cloe Petricca's (collectively, "Plaintiffs") Motion for Class Certification ("Plaintiffs' Motion"). (Pls.' Mot. (dkt. # 33).) Plaintiffs concurrently filed a request for judicial notice of four orders filed in King and Pierce County Superior Courts. (Dkt. # 38.) Defendant McMenamins, Inc. ("McMenamins") filed an opposition to class certification (Def.'s Resp. (dkt. # 45)), and an objection to Plaintiffs' request for judicial notice (dkt. # 44). Plaintiffs filed a reply in support of their class certification motion (Pls.' Reply (dkt. # 47)), and a request to strike one of McMenamins' exhibits (dkt. # 49). The Court held oral argument on November 6, 2023. (Dkt. # 51.) Having considered the parties' submissions, oral argument, the governing law, and the

REPORT AND RECOMMENDATION - 1

balance of the record, the Court recommends Plaintiffs' Motion (dkt. # 33) be DENIED. The Court DENIES Plaintiffs' request for judicial notice (dkt. # 38), and GRANTS Plaintiffs' request to strike (dkt. # 49).

## II. BACKGROUND

Plaintiffs, former employees of McMenamins, allege McMenamins engages in a "systematic scheme of wage and hour violations" by failing to provide employees statutory ten-minute rest periods and 30-minute meal periods or to compensate employees for missed breaks. (Am. Compl. (dkt. # 30) at ¶¶ 1-2.) Plaintiffs assert claims pursuant to RCW 49.12 for failure to compensate for missed meal and rest periods, and pursuant to RCW 49.52.050, .070, for willful and intentional withholding of such compensation. (*Id.* at ¶¶ 26-37.)

In the instant motion, Plaintiffs seek certification of a class defined as:

> All individuals who resided in Washington State and who worked for McMenamins, Inc. in Washington State, who were employed in the position of bartender or server (or any similar "front-of-the-house" position) at any time from February 9, 2019 to the date of the Order granting class certification (hereinafter, "Class Members").

(Pls.' Mot. at 3.) Plaintiffs seek to be designated class representatives, and that Brian Denlinger, Craig Ackermann, and Tatiana Hernandez be appointed class counsel. (*Id.*)

## III. LEGAL STANDARDS

### A. Class Certification

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Rule 23 operates as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. To maintain a class action, a plaintiff must "affirmatively demonstrate" compliance with Rule 23. *Id.* A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. Plaintiffs bear the burden of proving, by a preponderance of the evidence, that the prerequisites of Rule 23 are met. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022).

Under Rule 23(a), the party seeking certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Common questions of law or fact must be "capable of classwide resolution[.]" *Dukes*, 564 U.S. at 350.

After satisfying the Rule 23(a) requirements, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Plaintiffs seek certification under Rule 23(b)(3) (*see* Pls.' Mot. at 12), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

REPORT AND RECOMMENDATION - 3

Because several of Rule 23's requirements require a discretionary determination "where the trial court must look to both the legal and factual contexts of the litigation[,]" the ultimate decision regarding class certification "involve[s] a significant element of discretion." *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

B.   **Meal and Rest Breaks**

WAC 296-126-092 provides in relevant part:

> (1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer. . . .
>
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. . . .
>
> (5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

The State of Washington Department of Labor and Industries has promulgated an administrative policy on "Meal and Rest Periods for Nonagricultural Workers Age 18 and Over" pursuant to RCW 49.12 and WAC 296-126-092. (LNI Policy (Wall Decl. (dkt. # 42), Ex. G (dkt. # 42-7)).) Employees working more than five hours must be provided a 30-minute meal period starting within five hours, which may be unpaid and on premises "as long as employees are completely relieved from duty and receive 30 minutes of uninterrupted mealtime." (LNI Policy at 2-3.) Paid meal periods may be interrupted, although the employer must "make every effort" to provide uninterrupted meal breaks. (*Id.* at 3.) An employee may waive a meal period. (*Id.* at 4.) "While it is not required, the department recommends obtaining a written" waiver. (*Id.*)

Employees must be given a ten-minute rest period in each four hours of working time. (LNI Policy at 4.) The rest period is not waivable. (*Id.*) "Rest periods are considered hours

REPORT AND RECOMMENDATION - 4

worked" and thus are paid. (*Id.*) "Employees need not be given an uninterrupted 10-minute rest period when the nature of the work allows intermittent rest periods equal to ten minutes[.]" (*Id.* at 5.) There is a limit to the interruptions, however. "A series of ten one-minute breaks is not sufficient to meet the intermittent rest period requirement. (*Id.*) For a "business need," an employer may require employees to remain on-call during rest periods. (*Id.*)

## IV. DISCUSSION

### A. Challenged Submissions

#### 1. *Plaintiffs' Request for Judicial Notice*

Plaintiffs request the Court take judicial notice of four orders filed in Washington state trial courts, each of which grants class certification under Washington Superior Court Civil Rule 23 for claims against employers for missed and unpaid meal or rest periods. (Dkt. # 38, Exs. 1-4 (dkt. ## 38-1 to 38-4).) Plaintiffs contend the orders are relevant to Plaintiffs' Motion for class certification because the state courts granted certification with regard to "virtually identical claims[.]" (*Id.* at 3.) McMenamins argues the orders are "distinguishable" and other cases are more analogous. (Dkt. # 44 at 2-4.)

Under Federal Rule of Evidence 201, a court can judicially notice an adjudicative fact "not subject to reasonable dispute" because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Court records meet these standards. *See, e.g.*, *Ticor Title Co. v. Kiavi Funding, Inc.*, 2023 WL 3075766, at *2 (W.D. Wash. Apr. 25, 2023) ("judicial notice of the existence of court records is routinely accepted"). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

1    The Court "may take notice of proceedings in other courts, both within and without the
2    federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex*
3    *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)
4    (citation and internal quotation marks omitted). Judicial notice is not required, however, simply
5    to consider persuasive case law. *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 642 (N.D.
6    Cal. 2021) ("[T]he Court may consider these cases as persuasive authority, but need not grant
7    judicial notice of the orders."). Here, the state court orders do not have a direct relation to this
8    case, but are offered as persuasive authority.[1] Accordingly, the Court denies Plaintiffs' request
9    for judicial notice.

   2.    *McMenamins' Summary of Employee Declarations*

11    McMenamins filed 26 declarations by current employees totaling 108 pages. (Dkt.
12    ## 41-1 to 41-26.) The declarations were filed as attachments to a 47-page document, signed by
13    McMenamins' attorneys, that is identified as "an ER 1006 summary of the declaration
14    testimony[.]" (Dkt. # 41 at 1.) The summary contains two tables, the first of which lists each
15    declarant and summarizes their "McMenamins Employment History." (*Id.* at 1-4.) The second
16    table contains columns labeled "Fact" and "Supporting Evidence by Declarant Last Name." (*Id.*
17    at 4-46.) The "Fact" column includes arguments and legal conclusions such as "McMenamins'
18    uniform staffing policies are lawful" and "McMenamins provides lawful, paid, on-call meal and

---

[1] The Court notes, however, that under Washington law "courts should err in favor of certifying a class" because a class is always subject to later modification or decertification. *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 515 (Wash. 2018). In addition, where "class certification is sought at the early stages of litigation, [Washington] courts generally assume that the allegations in the pleadings are true[.]" *Miller v. Farmer Bros. Co.*, 115 Wn. App. 815, 820 (Wash. Ct. App. 2003). Under federal Rule 23, there is no presumption in favor of certification and plaintiffs must prove class prerequisites by a preponderance of the evidence. These differences make Washington class certification orders less persuasive.

REPORT AND RECOMMENDATION - 6

rest breaks." (*Id.* at 4, 20.) The "Supporting Evidence" column provides excerpts from the accompanying declarations. (*Id.* at 4-46.)

Plaintiffs filed an objection and request to strike the summary (dkt. # 41), on the grounds that a summary of witness testimony—especially containing argument—is improper under Federal Rule of Evidence 1006 and an attempt to avoid the word count limit.[2] (Dkt. # 49.)

Federal Rule of Evidence 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

The rule clearly contemplates that the underlying documents are too voluminous to examine. Here, McMenamins includes the 26 underlying declarations, which total 108 pages.

Portions of the summary amount to argument and appear to be an effort to circumvent word limits, as it would have been more appropriate for McMenamins to cite declaration excerpts in its briefing. *See Sims v. Lakeside Sch.*, 2008 WL 189674, at *7 (W.D. Wash. Jan. 17, 2008) ("[T]he summary is argumentative in nature and should normally appear in the body of a brief."). Moreover, Federal Rule of Evidence 1006 is only intended to permit admission of evidence that is too voluminous to itself be admitted. *See United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) ("The rule appears to contemplate, however, that a summary will be admitted instead of, not in addition to, the documents that it summarizes, and that it will have been prepared by a witness available for cross-examination, not by the lawyers trying the case.") (internal citations omitted). Accordingly, the Court strikes the summary (dkt. # 41).

---

[2] Plaintiffs' request to strike should have been included in their reply. *See* Local Civil Rule ("LCR") 7(g). Given that Plaintiffs' reply reached the 4,200-word limit, the separate filing appears to be an effort to circumvent the limit. *See* LCR 7(e)(3); Pls.' Reply at 13. Nevertheless, because it was McMenamins' improper filing that necessitated Plaintiffs' request to strike, the Court will address it.

REPORT AND RECOMMENDATION - 7

**B.     Class Certification**

Because the Court finds the analysis under Rule 23(b)(3) dispositive, it does not address the prerequisites of Rule 23(a).

   *1.     McMenamins' Policies*

McMenamins' Rule 30(b)(6) deponent, Human Resources Director Lisa Kinsley, states in a declaration that McMenamins' written break policies are contained in the Employee Handbook, which is distributed to all new employees during orientation, and the Owl Packet, which is posted on bulletin boards throughout all McMenamins locations.[3] (Kinsley Decl. at ¶ 5.) Ms. Kinsley states that "McMenamins pays for all rest and meal breaks." (*Id.* at ¶ 8.)

The Owl Packet closely tracks the LNI Meal and Rest Periods Policy, stating for example that workers must receive a paid, intermittent, 10-minute rest break for each four hours worked and a waivable 30-minute meal break if working more than five hours. (Kinsley Decl. at ¶ 5, Ex. A (dkt. # 43-1) at 3-4.) During paid breaks, employees may be required to be on premises but not working. (*Id.* at 3.) The Employee Handbook provides that "[e]mployees are not allowed to take a break . . . unless approved by their Manager." (*Id.* at ¶ 5, Exs. C-E (dkt. # 43-3 to 43-5) at 3.) Employees are "entitled to meal and rest periods. . . . These breaks will be scheduled at appropriate intervals and directed by the Manager on duty." (*Id.*)

Ms. Kinsley states that "McMenamins allows employees to voluntarily waive meal periods . . . by: (1) signing a revocable meal periods waiver form; (2) verbally waiving their meal period; and/or (3) waiving their meal period by conduct (i.e., deciding not to take a meal period)." (Kinsley Decl. at ¶ 9.) Managers "are required to check in with employees every shift

---

[3] Plaintiffs dispute that the Owl Packet is part of McMenamins' policies because "[s]everal of Defendant's own declarants admit its meal and rest period policies are contained in the Handbook." (Pls.' Reply at 9 n.6.) Plaintiffs fail to show that any declarant stated there are no policies found elsewhere, however.

to ensure that employees can take all required rest and meal breaks, even when the employee has a written meal waiver on file." (*Id.* at ¶ 12.) In the "rare instance" when a meal or rest break is missed, McMenamins compensates in one of three ways: "(1) employees may stay on the clock at the end of the shift to eat; (2) the manager can clock the employee out after the end of the employee's shift; or (3) the manager can adjust the time records to add time to the shift." (*Id.* at ¶ 15.)

### 2. Timekeeping Records

Plaintiffs' expert, senior data analyst Gabriel Anello, analyzed timekeeping data provided by McMenamins for a random sample of 15% of putative class members. (Anello Decl. (dkt. # 34) at ¶¶ 2-5.) Mr. Anello identified shifts long enough to be eligible for meal breaks and, assuming that punching out and then back in between five minutes and four hours later represented "a possible unpaid meal period," he opined that between 99.1 and 99.9% of shifts were missing meal periods. (*Id.* at ¶¶ 6-13.) Mr. Anello also reviewed the data for modifications reflecting that any missed meal or rest periods were added by a manager after an employee clocked out for the day, and found none. (*Id.* at ¶ 15.)

Both parties discuss the *Brady v. AutoZone* case in this Court, which concerned claims for missed unpaid meal breaks. The plaintiff sought certification of a class of employees who "worked more than five hours in a day but did not receive a meal break within five hours of the start of their shifts[.]" *Brady v. AutoZone Stores, Inc.* ("*Brady I*"), 2015 WL 5732550, at *1 (W.D. Wash. Sept. 30, 2015). The plaintiff sought to show violation of WAC 296-162-092 through time-card "punch-in/punch-out" data showing employees punched out after five hours of work. *Id.* at *2. The Court denied class certification, finding punch-out data was insufficient because it did not show whether employees took breaks without punching out or waived meal

1  breaks. *Id.* at *3. Although punch-card data showed when violations "may" have occurred, the
2  Court found individual issues would predominate because of the need to inquire as to reasons for
3  missed breaks. *Id.* at *6.

4        The Court then certified two questions to the Washington Supreme Court, which held that
5  (1) an employer is not automatically liable if employees miss meal breaks, because employees
6  may waive them; and (2) "an employee asserting a meal break violation under WAC 296-126-
7  092 can establish his or her prima facie case by providing evidence that he or she did not receive
8  a timely meal break. The burden then shifts to the employer to rebut this by showing that in fact
9  no violation occurred or that a valid waiver exists." *Brady v. Autozone Stores, Inc.*, 188 Wn.2d
10 576, 582, 584-85 (Wash. 2017).

11       This Court then denied the plaintiff's renewed class certification motion because the
12 proffered time-card data alone was "simply not a reliable indicator of whether a meal break
13 violation occurred, or of which individuals belong in the class[,]" where "the record indicates
14 that dozens, if not hundreds, of AutoZone employees waived their meal breaks in various ways."
15 *Brady v. AutoZone Stores, Inc.* ("*Brady II*"), 2018 WL 3526724, at *6 (W.D. Wash. July 23,
16 2018). "This defense does not simply go to damages; it goes to the underlying liability under
17 WAC 296-126-092." *Id.*

18       Here, Mr. Anello concluded that unpaid meal periods were taken in less than 1% of
19 eligible shifts. (Anello Decl. at ¶¶ 10-12.) McMenamins presented unrebutted evidence that meal
20 breaks are paid, however. (*See* First Denlinger Decl., Ex. B (Kinsley Dep. at 28:16-29:5 ("all
21 meal periods are paid"; "meal periods are never recorded as off-the-clock unpaid time")).)
22 Because meal periods are paid, there is no reason to expect that employees would punch out. Mr.
23 Anello's punch-card analysis thus does not even show when violations "may" have occurred, as

it did in *Brady*. *Cf. Brady I*, 2015 WL 5732550, at *6. There appears to be no connection between Mr. Anello's analysis and any evidence of McMenamins' classwide liability. The Court concludes Plaintiffs have not met their burden of identifying a common method of proving liability through use of McMenamins' timekeeping records.

          3.        *Employee Declarations*

Plaintiffs submit their own and 21 other putative class members' declarations describing frequent missed meal and rest breaks. (Dkt. # 39.) Plaintiff Breshears states that due to understaffing "[t]hroughout [her 5 or 6 month employment] at McMenamins, [she] was rarely, if ever, able to take 30-minute meal breaks or 10-minute rest breaks." (Dkt. # 39-1 at ¶ 4.) "McMenamins had no policy or practice for . . . employees to record [their] missed meal or rest periods or to compensate" for them. (*Id.* at ¶ 5.) Plaintiff Jarmon states that, during her approximately one-year employment there, "due to McMenamins' regular understaffing" she missed approximately 80% of meal breaks and 50% of rest breaks. (Dkt. # 39-2 at ¶ 3.) Interrupted breaks usually could not be completed later. (*Id.*) When she and other employees asked for meal or rest breaks, "managers would discourage [them] with disapproving looks or infer [they] had to do extra work or 'make a deal' to get [their] breaks." (*Id.*) Plaintiff Petricca states "due to severe understaffing . . . and the fact that management would become visibly upset if [she] took rest breaks, [she] was almost never able to take 10-minute rest periods" and was "never allowed or able to take a meal period before the fifth hour of work." (Dkt. # 39-4 at ¶ 3.) Plaintiff Terhorst states he worked for McMenamins as a server, when he was "occasionally able" to take a rest or meal break, and as a host, when he was "never able to take meal or rest breaks[.]" (Dkt. # 39-5 at ¶¶ 2-3.) He explains his "managers frequently told [him] that they were shorthanded, and there was no one to cover for [him] to take breaks." (*Id.* at ¶ 3.) He adds that

REPORT AND RECOMMENDATION - 11

"sometime around July 2022," McMenamins began requiring employees to sign a "break log" to indicate they either took meal and rest breaks or voluntarily waived them, even though they had not. (*Id.* at ¶ 4.) Once every few weeks, Plaintiff Terhorst stayed for 10-15 minutes after his shift to eat lunch before punching out but "was criticized by management" for doing so. (*Id.* at ¶ 7.)

Plaintiff Kirby states that, during his 17 years with McMenamins as a bartender, server, and "Assistant Assistant Manager," employees were not generally provided meal and rest breaks but rather "chances to step away."[4] (Dkt. # 39-3 at ¶ 3.) Plaintiff Kirby asserts that because of "pressure from the Head Manager to meet the labor percentage goals" he sometimes sent employees home even when the restaurant was busy, which increased workloads and made it more difficult to take breaks. (*Id.* at ¶¶ 4-5.) At a deposition, he explained "labor percentage" as "how much the company is paying people to currently be on the clock and getting paid and compared to how much money is coming in." (Wall Decl., Ex. B (Kirby Dep. (dkt. # 42-2) at 85:16-22).) He stated the labor percentage "was a thing you could check moment to moment[.]" (*Id.* at 85:23-86:2.) It was part of his job to check the labor percentage at two-hour intervals and keep it below an unspecified number. (*Id.* at 86:3-13.) Plaintiff Kirby stated in his deposition that "McMenamins had no procedures in place for documenting breaks." (Second Denlinger Decl. (dkt. # 48), Ex. A (Kirby Dep. (dkt. # 48-1) at 63:22-23).)

Putative class member Adri Boer states she would "eat some food whenever [she] had a few minutes here and there throughout [her] shift." (Dkt. # 39-6 at ¶ 3.) Ms. Boer explains

---

[4] At a deposition, Plaintiff Kirby's testimony indicated he did not understand that Washington allows interrupted breaks. Asked if he would consider "a break that was interrupted like two minutes here and three minutes there and then another five minutes later but each time interrupted and you had to go back to work in between each of those" to be a lawful ten-minute rest break, he replied he "wouldn't have, no." (Wall Decl., Ex. B (Kirby Dep. (dkt. # 42-2) at 87:13-24).) Similarly, he answered that a 30-minute meal break in three ten-minute segments would not be a full break. (*Id.* at 88:2-17.)

REPORT AND RECOMMENDATION - 12

managers seemed "overly concerned with labor percentages and labor numbers" and she regularly heard managers talking to each other about the "labor number." (*Id.* at ¶ 4.)

Plaintiff Petricca testified at a deposition that a supervisor, Heidi Smith, told her that McMenamins "understaff intentionally so that they can make more money." (Wall Decl., Ex. E (Petricca Dep. (dkt. # 42-5) at 175:16-21).) Ms. Smith, however, stated in a declaration that Ms. Petricca's statement was "a bald lie." (Smith Decl. (dkt. # 41-24) at ¶ 11.) Plaintiffs further state McMenamins never compensated for missed breaks by adding time at the end of a shift, suggesting the employee stay after the shift for a break, or clocking out for the employee. (*See, e.g.*, dkt. ## 39-1 at ¶¶ 6-9, 39-2 at ¶¶ 4-7, 39-3 at ¶¶ 6-7.)

McMenamins counters Plaintiffs' proffered declarations with declarations from 26 current employees, primarily Assistant Assistant Managers. Shawn Baker states that "[b]ecause meal breaks are paid at McMenamins, many people chose to waive a portion of their meal break, but McMenamins encouraged us to take the entire meal break[.]" (Dkt. # 41-1 at ¶ 4.) Gabe Boline states that as an Assistant Assistant Manager he is "responsible for ensuring employees get their breaks" but "most employees . . . are good about breaking themselves" and "McMenamins gives their employees autonomy on when and whether to take their meal break." (Dkt. # 41-2 at ¶¶ 3, 6.) He explains that sometimes employees do not want a break when "having a busy day and making a lot of money from tips." (*Id.* at ¶ 6.) Susie Dolan states: "I don't need to ask permission to take my rest break. I've been with McMenamins long enough to know when it's a good time, and I just let whoever is managing know I'm taking my break." (Dkt. # 41-6 at ¶ 5.)

Valentina Carrera states "opening and closing managers are in charge of tracking meal and rest breaks for all employees[.]" (Dkt. # 41-4 at ¶ 5.) There is no explanation for how

REPORT AND RECOMMENDATION - 13

tracking is accomplished. Ms. Carrera states that, "[r]egardless of a busy or slow night, there is always someone scheduled to relieve an employee for a meal and rest break." (*Id.* at ¶ 6.) In her "personal observations and experience as a manager, everyone takes their rest break and all employees either take their full meal break or they will voluntarily waive their meal break." (*Id.*)

Zachary Butz states that "many people, like [him], have signed a meal break waiver." (Dkt. # 41-3 at ¶ 3.) Mr. Butz asserts that, when he worked with Plaintiff Kirby, he observed him "find time to take his smoke breaks and . . . saw him sitting down and eating in the office on several occasions." (*Id.* at ¶ 10.)

Autumn Foster states "[n]o two departments or two people handle breaks exactly the same." (Dkt. # 41-8 at ¶ 5.) For example, the "Rooftop" typically has one server and one Assistant Assistant Manager to provide each other breaks, but if there is one server then a restaurant employee will be sent up to relieve the server. (*Id.* at ¶ 6.) Similarly, bartenders are usually with one manager who relieves the bartender. (*Id.* at ¶ 7.) But during busy times there are two to four bartenders, who can then take breaks as needed. (*Id.*) Servers are typically scheduled "in a staggered fashion in order to break each other, but how breaks are taken and who is staffed is highly dependent on the time of day or season." (*Id.* at ¶ 8.)

Plaintiffs contend the current employee declarations provided by McMenamins should be given little weight because current employees are presumed to feel obligated to cooperate with their employer. (Pls.' Reply at 2-3.) Plaintiffs also argue the declarations are unreliable, pointing to an inconsistency where an employee stated he was "not aware of any employees . . . missing breaks" yet stated that he had provided options to compensate employees for missed breaks. (*See* dkt. # 41-17 at ¶¶ 11-12.)

        *4.*      *Predominance Analysis*

Even if McMenamins' submitted declarations are disregarded, Plaintiffs' submitted declarations fail to demonstrate that McMenamins' liability can be established through a classwide common method. For example, some employees describe being deterred from taking breaks by a manager's demeanor but there is no indication that other managers showed a similar demeanor. (*See, e.g.*, dkt. # 39-2 at ¶ 3 ("disapproving looks").) In a similar case, a district court held plaintiff's testimony that a supervisor "had a way of 'making you feel guilty for leaving' . . . establishes, at best, that her interactions with a particular supervisor, at a particular centre location, resulted in missed meal breaks on some occasions. But it does not support Plaintiff's claim of a companywide policy or practice of forcing employees to miss meal breaks in the name of upholding customer service standards." *Coleman v. Jenny Craig, Inc.*, 2013 WL 6500457, at *9 (S.D. Cal. Nov. 27, 2013).

Several putative class members state that "McMenamins had no policy or practice for . . . employees to record our missed meal or rest periods or to compensate . . . for missed meal or rest periods." (Dkt. # 39-1 at ¶ 5.) The lack of a policy itself would not violate statutory requirements for meal and rest breaks, however, as long as breaks were taken or compensated. Moreover, Ms. Kinsley's declaration and deposition testimony provide evidence that different managers have different ways to track missed breaks, and McMenamins does have a policy or practice to compensate for missed breaks. (Kinsley Decl. at ¶¶ 15 (compensation policy), 19 ("Some McMenamins managers use break logs"), 20-21 ("Managers are required to check in with employees every shift . . . to determine if break coverage is necessary.").) The Court finds Plaintiffs have not shown by a preponderance of the evidence that the issue of whether missed breaks were compensated can be resolved on a classwide basis.

Plaintiffs contend this case is similar to *Carlson v. Home Depot USA Inc.*, where the Court granted class certification because plaintiff had shown "both compelling time punch data and policies and practices that impede the class members' ability to take timely and full rest breaks." 2021 WL 4636858, at *8 (W.D. Wash. Oct. 7, 2021). The companywide policies at issue provided that employees would be disciplined if they failed to take scheduled breaks, but would also be disciplined if they went on break while customers were waiting, creating a Catch-22 for employees. *Id.* at *2. The plaintiff presented evidence that the employees had difficulty finding replacement staff to cover their breaks because of their specialized knowledge and because "store managers [were] financially incentivized to leanly staff each store." *Id.* at *2-3. No such companywide policies are at issue here. Plaintiffs identify no companywide policy disciplining employees for failing to take breaks or for taking breaks while customers were waiting.

Plaintiffs refer to understaffing, but fail to show a common practice or policy for all or most McMenamins locations. Some Plaintiffs and putative class members mention a "labor percentage" or "labor number" that Plaintiffs contend incentivizes managers to understaff, but Plaintiffs fail to connect any uniform McMenamins policy to meal and rest period break violations. (*See, e.g.*, dkt. ## 39-3 at ¶¶ 4-5, 39-6 at ¶ 4.) In *Brickey v. Dolgencorp., Inc.*, although a companywide policy giving stores a "labor budget" limiting hours of work and overtime incentivized managers to "falsely reduce reported work hours," the Court found that plaintiffs had made no showing that it was "impossible or even difficult for managers to comply with the policy without engaging in illegal activities." 272 F.R.D. 344, 347 (W.D.N.Y. 2011). The Court denied class certification because "plaintiffs have failed to demonstrate a factual nexus between [the company's] payroll hours allocation policy, and the actions that individual,

rogue managers might have taken—wholly on their own—in response to the policy." *Id.* Here, Plaintiffs' declarations fail to demonstrate a factual nexus between any "labor percentage" policy and meal or rest period violations.

Similarly, in *Chavez v. Lumber Liquidators, Inc.*, the Court denied class certification where plaintiffs alleged missed breaks due to understaffing but there was "no indication that [the company's] staffing levels are uniform from store-to-store." 2012 WL 1004850, at *8 (N.D. Cal. Mar. 26, 2012). "To determine whether staffing levels resulted in missed meal periods, the Court would need to engage in individualized questions concerning the staffing requirements at each of" McMenamins' ten locations. *Id.* Accordingly, the Court concludes Plaintiffs have not met their burden to show that common issues of law or fact predominate to make class certification appropriate.

## V.     CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiffs' Motion (dkt. # 33) be DENIED. The Court DENIES Plaintiffs' request for judicial notice (dkt. # 38), and GRANTS Plaintiffs' request to strike (dkt. # 49). A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 24, 2023**.

1  The Clerk is directed to send copies of this order to the parties and to the Honorable

2  Benjamin H. Settle.

3  Dated this 8th day of November, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18